JAEGER and another, Respondents, vs. FARMERS' MUTUAL TOWN FIRE INSURANCE COMPANY, Appellant.

*February 15—March 11, 1924.*

*Insurance: Alterations of premises affecting fire hazard: Changing walls: Permit to make repairs: Construction: Keeping automobile on premises: Failure to state fact in application.*

1. Where, in making alterations in insured premises, the insured removed a concrete floor and excavated under the foundation of the building, under which temporary supports had been placed, and had poured concrete into the places from which the earth had been removed, a finding of the jury that insured made no change or alteration in the building which increased the fire hazard will not be disturbed.  p. 317.
2. Changes in the walls of a building did not relieve the insurance company from liability under a policy prohibiting changes in fire and division walls, where the policy did not define a fire or division wall and the walls were not of the character so designated by the industrial commission under authority of sub. (5), sec. 101.10, Stats.  p. 318.

3. Permits of the insurer, attached to the policy, for repairs and alterations in the insured building, which contained no express limitation as to the time for making such alterations nor any clause of forfeiture, are construed to suspend a clause in the policy forfeiting the policy if repairs extended beyond fifteen days. p. 319.
4. Insurance contracts are to be most strongly construed against the insurer and in favor of the insured, especially where a forfeiture is involved. p. 319.
5. The failure of the insured to mention in his application for insurance that he kept an automobile in a shed on one side of the building was insufficient to forfeit the policy where the car had been dismantled and not used for several months and contained no gasoline and the agent knew that the shed was used as a garage. p. 320.

APPEAL from a judgment of the circuit court for Rusk county: JAMES WICKHAM, Circuit Judge. *Affirmed.*

Plaintiffs sued to recover on two policies of fire insurance, one for $3,500, covering a building used as a residence and cheese factory, and the other for $1,000, covering furniture and apparatus used in the factory. The property was destroyed by fire on May 28, 1921. *Jaeger* sues as owner and *Prindle* as mortgagee.

The defendant company refused to pay the loss and alleged that plaintiff *Jaeger* was responsible for the fire, and that it did not occur without negligence; that without the knowledge and consent of defendant, plaintiff employed mechanics who were at work altering the premises beyond a period of fifteen days and at the time that the fire occurred; that plaintiff made alterations on the premises whereby he changed a division or fire wall and removed and replaced a floor structure and wall, which alterations were in progress at the time of the fire; and that plaintiff housed an automobile in a shed attached to the factory prior to and at the time of the fire without the consent of the defendant.

The lower floor or basement of the building was used as a cheese factory. After the policies of insurance were issued plaintiff planned to lower the concrete floor in a room at one

end of the factory. To do this it was necessary to remove a concrete floor and excavate under the foundation walls. When the fire occurred most of the floor had been removed and a part of the excavating under the walls had been finished. Temporary supports had been placed under the foundations and concrete had been poured into the places from which the earth had been removed, except under a portion of one wall.

A brick chimney extended from the factory through the upper story. The chimney rested upon supports, which in turn rested upon the foundation of a partition wall which plaintiff had undermined and built up with concrete. During the fire, or immediately after, the chimney and this partition wall fell down.

A cook stove in the upper floor of the building was connected with the chimney. Plaintiff testified that he and his wife left their home in the early part of the evening; that when they left, a small fire of chips and wood was burning in the stove; and that when they returned the building was in flames.

At the time of the fire there was an automobile in a shed on one side of the factory. Plaintiff testified that the automobile was there when the policies were issued and that it was known by the defendant's agent to be there; that immediately after the automobile had been put into the shed the wheels were removed and also the gas from the tank, and the car had never been in use.

The policies sued on contained a provision that "unless otherwise provided by agreement, in writing, attached hereto, this company shall not be liable for loss or damage occurring . . . (c) while mechanics are employed in the building, altering or repairing the described premises beyond a period of fifteen days."

The following permits were attached to the policy:

"(1) *To construct ordinary outbuildings.* Permission to make alterations, repairs and additions to any building

herein described, and the insurance, if any, on such item is hereby extended 'and made to cover such repairs and improvements, subject to the conditions of this policy."

"(2) Permission granted for mechanics to make alterations, improvements, and repairs, and to construct attached and communicating additions and sheds (which do not change a division wall or fire wall) to any building herein described, and the insurance, if any hereunder, on any such building, is hereby made to cover such alterations, improvements, repairs, attached and communicating additions and sheds, including building materials and supplies therefor, while contained therein or on the premises immediately adjacent thereto; but any change in a division wall or fire wall, the removing or replacing of a floor structure or wall, or the construction of additional stories to any building herein described, shall not be permitted or covered by this policy unless specifically included by indorsement attached thereto."

The jury found that the plaintiff did not make any change or alteration in the building after the policies were issued which increased the fire hazard, and that at the time of the fire mechanics were employed in altering and repairing the building beyond a period of fifteen days.

Judgment was ordered for plaintiffs in the sum of $4,728 and costs.

For the appellant there was a brief by *Carow & Goodsitt* of Ladysmith, and oral argument by *J. W. Carow.*

For the respondents there was a brief by *Thomas & Fisher* of Ladysmith, and oral argument by *A. W. Fisher.*

JONES, J. Appellant's counsel argue that the finding of the jury that plaintiff made no change or alteration in the building which increased the fire hazard should have been set aside. In *Kircher v. Milwaukee Mech. Mut. Ins. Co.* 74 Wis. 470, 43 N. W. 487, the policy was on a dwelling house to be occupied by tenants. The policy provided that:

". . . It should be wholly void . . . if the premises should at any time be occupied or used, in whole or in part, for any purpose, whether manufacturing or otherwise, dif-

ferent from that set forth in the application or policy, or if the risk should be increased by means within the control of the assured. The tenants used the second story of the house for shaving hoops for a period of one week, but such use ceased three days before the fire, and the jury found that it did not materially increase the risk." *Held,* that there was no substantial breach of the condition.

It was held that this clause was a continuing warranty and that a substantial breach of it would avoid the policy even though the transaction in no way contributed to the loss, but that to prevent such forfeiture the contract should be construed strongly against the insurer and as favorably for the insured as its terms would reasonably permit. It was also held that the jury were not concluded on the question whether the hazard was increased by the testimony of men skilled in the business of insurance.

In the present case expert testimony was received in behalf of defendant, but the question was fairly submitted to the jury, and although there might be differences of opinion on the subject we see no good reason for reversing this finding. *Kircher v. Milwaukee Mech. Mut. Ins. Co.* 74 Wis. 470, 43 N. W. 487; *Siemers v. Meeme Mut. H. P. Ins. Co.* 143 Wis. 114, 126 N. W. 669.

It is the next contention that defendant is not liable because mechanics were employed in the building beyond a period of fifteen days during the life of the policy. The jury found that mechanics were so employed, and there is no ground for reversing that finding.

It is argued that the repairs and changes as to division walls, fire walls, and the concrete floor relieved the company from liability under the terms of the policy, and were not authorized by either of the permits.

The policy does not define fire walls or division walls. By sub. (5), sec. 101.10, Stats., the industrial commission is given power:

"To ascertain, fix and order such reasonable standards, rules or regulations for the construction, repair and main-

tenance of places of employment and public buildings, as shall render them safe."

Pursuant to this authority the commission in their Building Code, Order 5108, have defined a standard fire wall as follows:

"A standard fire wall shall be built of brick or concrete not less than twelve inches in solid thickness, or of reinforced concrete not less than six inches thick. Every standard fire wall shall extend either from the foundation or from a fireproof floor, to a fireproof ceiling; or if the roof is not fireproof, such wall shall extend at least three feet above the highest adjoining roof line of the same building and shall be capped with stone, tile, or other indestructible material. Every opening in a standard fire wall shall be closed with a standard fire door or a fixed standard fire window."

And have defined a division wall as follows:

"Where a dividing wall is required in any building, such wall shall be of solid incombustible fire-resisting material of the same thickness as required for inclosing walls; and shall be continuous from the foundation to the roof, in a fireproof building, or to three feet above the roof in a non-fireproof building. Each opening in a division wall shall have a standard fire door on each side of the wall." Order 5202, Building Code.

According to the testimony the walls were not of this character. In the absence of any other definition we consider that the trial court was justified in holding that repairs and alterations were not made in the walls contrary to the terms of the policy.

This leaves the question whether the alterations and repairs in the concrete floor caused a forfeiture. The fifteen-day clause is the only one in the policy which restricts the right to make the alterations and repairs. But for that clause any changes might have been made which did not increase the hazard. It thus becomes necessary to inquire what was the object and what the effect of the two permits which were attached.

Jaeger v. Farmers' Mut. Town Fire Ins. Co. 183 Wis. 313.

Defendant's counsel argue that the first permit given in the statement of facts is controlled by the heading and relates only to outbuildings, but its language is broad and not so restricted, and no outbuildings seem to have been insured. Neither permit contains any express limitation as to the time for making alterations and repairs, and neither contains any clause of forfeiture. The fifteen-day clause was by its very terms subject to modification by agreement in writing added to the policy.

The permits seem to have little meaning unless they conferred privileges as to making changes not conferred by the policy. In a careful opinion the trial court came to the conclusion that the fifteen-day clause was suspended by the permits and that the insurance at the time of the fire was neither forfeited nor suspended. It is ably argued by counsel for defendant that the permits gave no additional powers or privileges. But in our opinion there is such doubt on this subject that the ordinary rule for the construction of insurance contracts may be applied; that is, they are to be most strongly construed against the insurer and in favor of the insured, especially where a forfeiture is involved. *Morse v. Buffalo F. & M. Ins. Co.* 30 Wis. 534; *Hammel v. Queen's Ins. Co.* 54 Wis. 72, 11 N. W. 349; *Kircher v. Milwaukee Mech. Mut. Ins. Co.* 74 Wis. 470, 43 N. W. 487; *Patterson v. Natural Premium Mut. L. Ins. Co.* 100 Wis. 118, 75 N. W. 980; *Siemers v. Meeme Mut. H. P. Ins. Co.* 143 Wis. 114, 126 N. W. 669; *Fehrer v. Midland Cas. Co.* 179 Wis. 431, 190 N. W. 910.

The application contains the following:

"*Automobile permit.* Permission to house one automobile in barn or other outbuilding provided the part of the building in which the automobile is stored has only an earth, concrete, or other incombustible floor."

It is further contended that the failure to mention the automobile and housing it without permission avoided the policies, and that the court should have submitted a question

to the jury on the subject. The car had not been in use for several months. It was partly dismantled, the wheels having been taken off, and contained no gasoline. When the application was made, the agent knew the facts and that the shed was used as a garage. In *Welch v. Fire Asso.* 120 Wis. 456, 98 N. W. 227, this court quoted from a former decision as follows:

"If, when the agent of an insurance company delivers a policy of insurance, he has knowledge of the facts as regards the subject of the insurance inconsistent with the terms of the policy, the assurer, by accepting the premium, is estopped from declaring the policy void because the terms thereof were not so changed in writing as to conform to the facts." Page 461.

The same rule was declared in *Gould v. Pennsylvania F. Ins. Co.* 174 Wis. 422, 183 N. W. 245. We do not think the objection well taken.

*By the Court.*—Judgment affirmed.