Lee, Respondent, v. Milwaukee Gas Light Company, Appellant.

*June 3—June 28, 1963.*

334

For the appellant there were briefs by *Sonnenberg & Boden* of Milwaukee, and oral argument by *H. F. Sonnenberg*.

For the respondent there was a brief by *Eisenberg & Kletzke,* attorneys, and *Edwin A. Star* of counsel, all of Milwaukee, and oral argument by *Sydney M. Eisenberg*.

HALLOWS, J. The defendant argues the court erred in not granting an involuntary nonsuit against the plaintiff, in not directing a verdict, and in not changing the answers of the verdict and dismissing the complaint. All three assignments rest on the same proposition that there was no direct evidence of negligence or causation and the jury could only speculate.

Basically, the defendant's position challenges the sufficiency of the evidence. The motion for involuntary nonsuit is equivalent to a demurrer to the evidence. *Bartz v. Braun* (1961), 14 Wis. (2d) 425, 111 N. W. (2d) 431; *France v. Sullivan* (1937), 223 Wis. 477, 271 N. W. 42; *Obenberger v. Interstate Oil Co.* (1933), 211 Wis. 245, 248 N. W. 97. On such a motion, the court was required to review the evidence in the light most favorable to the plain-

tiff including all the reasonable inferences which may be drawn. Likewise, on a motion to direct the verdict the court is required to consider the evidence most favorable to the party against whom a direction of the verdict is sought. In *Davis v. Skille* (1961), 12 Wis. (2d) 482, 484, 107 N. W. (2d) 458, we stated: "A verdict should only be directed against a plaintiff where plaintiff's evidence, giving it the most-favorable construction it will reasonably bear, is insufficient to sustain a verdict in the plaintiff's favor," citing *Western Casualty & Surety Co. v. Dairyland Mut. Ins. Co.* (1956), 273 Wis. 349, 77 N. W. (2d) 599; *Pelitsie v. National Surety Corp.* (1956), 272 Wis. 423, 76 N. W. (2d) 327; *Radmann v. Chicago, M. & St. P. R. Co.* (1890), 78 Wis. 22, 47 N. W. 97. If a material question of fact exists upon which reasonable minds could differ, the motion must be denied. *Bruno v. Golden Bell Dairy* (1961), 15 Wis. (2d) 106, 112 N. W. (2d) 199; *McDonald v. Bituminous Casualty Corp.* (1960), 11 Wis. (2d) 202, 105 N. W. (2d) 312. The motion to set aside the verdict likewise raises the question of whether there is or is not sufficient evidence upon the issue to take the case to the jury. *Nitka v. Van Camp* (1949), 256 Wis. 119, 40 N. W. (2d) 570; *Wear v. Northern States Power Co.* (1952), 262 Wis. 9, 53 N. W. (2d) 777.

An examination of the material facts favorable to the plaintiff is therefore necessary. The defendant Milwaukee Gas Light Company owned the building on the north side of East Wisconsin avenue in the city of Milwaukee. Across the front of the building next to the public sidewalk there were installed large, ¼" plate-glass windows. The particular window in question was 9' 10" in width and 11' 9" in height. On November 20, 1958, Annie Mae Lee, the plaintiff, was standing on the public sidewalk facing east about six feet from the building and somewhat west of the window, waiting for a bus. It was a windy day with the wind

from the east. The window made a popping noise and broke outward shattering on the public sidewalk and particles of glass landed on the plaintiff's head and shoulders. The plaintiff testified she felt a piece of glass enter her left eye. A witness who was nearby testified bits of glass covered the plaintiff's shoulders and part of her head and the plaintiff immediately put her hands over her eyes and said, "I got something in my eye." Plaintiff was examined by a doctor shortly after the occurrence but he found no foreign object in the plaintiff's eye or any evidence of a puncture, abrasion, or penetration of the eyeball. There was, however, a redness in the area. Plaintiff was examined the following day by another doctor who also found no foreign body in the eye but treated her for her eye difficulty. The injury did not affect permanently the plaintiff's sight but she is unable to sew or look at television without her eye becoming reddened and discharging. This condition is somewhat alleviated by the use of medication.

One of the witnesses for the plaintiff testified the setting of the glass window was wrong and too light for the height of the window. The glass was set on two, four-inch-long steel blocks, having a soft lead topping and positioned one fourth the distance from each end. The glass is held in place by bronze strips around its perimeter with lugs every 10 inches. The bronze strips, fastened lengthwise to the building, were 1″ wide and overlapped the glass $\frac{3}{8}$″. It was testified these strips should have been $1\frac{1}{2}$″ wide. The wind on the day in question apparently did not exceed 23 m.p.h. and under the Beaufort scale would be characterized as "moderate breeze" to "fresh breeze." The plaintiff's expert testified the standard safety limit for window settings in Milwaukee on the day of the accident was to withstand winds up to 65 miles per hour. On behalf of the defense there was testimony that about two weeks prior to the accident the window had been examined for the purpose of in-

serting packing between the plate glass and its frame in order to reduce the amount of dust and dirt filtering into the building, and the settings were standard and customary with that type of window when the building was built more than twenty years ago. However, we must accept the plaintiff's expert witness' testimony the window did not meet the standards for the city of Milwaukee which have been prevalent for the last ten or fifteen years. Glass windows exceeding 8′ or 9′ require some support by way of a mullion or device which would stabilize the window from vibrating.

The owner of the building abutting a public highway, which includes a public sidewalk, must exercise reasonable care not to endanger the safety of persons lawfully using the public way. While the owner or person in control of the building is not an insurer, he is bound to use reasonable care and skill in the construction and maintenance of the building, which includes the duty to inspect from time to time. *Majestic Realty Corp. v. Brant* (1929), 198 Wis. 527, 224 N. W. 743; *Delaney v. Supreme Investment Co.* (1947), 251 Wis. 374, 29 N. W. (2d) 754 (overruled on another point in *Fisher v. Simon* (1961), 15 Wis. (2d) 207, 112 N. W. (2d) 705); 25 Am. Jur., Highways, p. 658, sec. 364; see Anno. 7 A. L. R. 204. The duty to inspect one's building is recognized in *Feeney v. New York Waist House* (1927), 105 Conn. 647, 136 Atl. 554; *Smith v. Earl D. Hanson, Inc.* (1957), 9 Misc. (2d) 244, 170 N. Y. Supp. (2d) 866. Defendant argues it fulfilled its duty of inspection when the windows were repacked two weeks before the occurrence. Admitting when the windows were repacked the mechanism for holding the window in place was inspected, this argument does not answer the question of whether such a device or installation was sufficient to free the defendant from negligence.

In addition to the evidence the setting of the glass was too light for the height of the window, the plaintiff relies

on the doctrine of *res ipsa loquitur*. This doctrine has recently been the subject of two exhaustive opinions by this court. *Turk v. H. C. Prange Co.* (1963), 18 Wis. (2d) 547, 119 N. W. (2d) 365; *Fehrman v. Smirl*, ante, p. 1, 121 N. W. (2d) 255. The two elements necessary for the application of the doctrine in Wisconsin are present in this case, namely, the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence, and the accident must be caused by an agency or instrumentality within the exclusive control of the defendant. There can be no dispute the plate-glass window in the defendant's building was exclusively within its control. As to the first element, the testimony is to the effect the setting for this large plate-glass window was insufficient and too light, that such settings in Milwaukee should be able to hold a window in winds up to 65 miles per hour. The defendant's argument that at the time of the accident there were high winds which would excuse the defendant from liability is without merit.

There is no evidence to justify the conclusion the wind was of such force as to be unforeseeable as a probability in Milwaukee. A 36-m.p.h. wind was considered foreseeable and not an act of God in *Leonard Brothers v. Newton* (Tex. Civ. App. 1934), 71 S. W. (2d) 613. Whether winds of approximately 80 m.p.h. constituted an act of God was considered a jury question in *Uggla v. Brokaw* (1907), 117 App. Div. 586, 102 N. Y. Supp. 857, while a 75-m.p.h. wind during the hurricane Hazel coming with only a twenty-minute warning was held to excuse the defendant in *King v. Queen Anne Food Products* (1958), 5 App. Div. (2d) 596, 173 N. Y. Supp. (2d) 975. It is not the possibility but the probability of harm in terms of foreseeability upon which the liability for negligence rests. *Wisconsin Power & Light Co. v. Columbia County* (1962), 18 Wis. (2d) 39, 117 N. W. (2d) 597.

There is nothing in the nature of plate-glass windows which would immunize such cases from the doctrine of *res ipsa loquitur*. Nor is there any evidence to explain the breaking of the window because of a foreign object's hitting it or because the wind exceeded the force which the installation and setting of the window were capable of withstanding according to the customary standards for that size window in the city of Milwaukee. On the problem of the application of the doctrine of *res ipsa loquitur* to glass windows, see Anno. Falling Glass—Injury—Liability, 81 A. L. R. (2d) 897; *Young v. Marlas* (1952), 243 Iowa 367, 51 N. W. (2d) 443; *Berent v. Metropolitan Life Ins. Co.* (1935), 279 Ill. App. 430.

The direct evidence of negligence does not prevent necessarily the application of the doctrine of *res ipsa loquitur*. Specific elements of negligence not reaching the point of a *prima facie* case which is overcome by other evidence may be supported by the application of the doctrine, *Brunner v. Van Hoof* (1958), 4 Wis. (2d) 459, 90 N. W. (2d) 551; *Turk v. H. C. Prange Co., supra,* and the doctrine may rest in some cases on expert testimony. *Fehrman v. Smirl, supra.* On the evidence presented it was not error on the motions for nonsuit and for a directed verdict to draw a permissive inference of negligence by applying the doctrine in favor of the plaintiff or to give the instruction to the jury.

The defendant contends the jury was left to speculate on the cause issue. This argument is based on the fact there was no direct credible evidence that the plaintiff had a glass particle in her eye and because the day was windy the plaintiff easily could have gotten some other foreign body in her eye. The defendant relies on *Hyer v. Janesville* (1898), 101 Wis. 371, 77 N. W. 729, for the proposition that where there is no direct evidence of how an accident occurred and the circumstances are clearly as consistent with an actionable cause as with a nonactionable one, it is not within the

province of the jury to speculate and guess where the truth lies. We do not consider the doctrine of that case applicable. Admittedly, it was a windy day in downtown Milwaukee and admittedly there may be foreign objects present in the air under such conditions, but only a possibility and not a probability exists that any given person is going to get a foreign object in his eye. If there were evidence of dirt or other foreign objects in the wind in the near vicinity of the plaintiff at the time of the accident, a probability could exist. But this would not necessarily help the defendant because the preponderance of probabilities is sufficient upon which to base a finding to a reasonable certainty which will support a verdict. *Rudy v. Chicago, M., St. P. & P. R. Co.* (1958), 5 Wis. (2d) 37, 92 N. W. (2d) 367. However, the evidence supports an inference of probability which the jury could and did draw against an inference of possibility. This record did not put the jury in the position to speculate which of two possibilities was the fact. *Hafemann v. Seymer* (1928), 195 Wis. 625, 219 N. W. 375; *Heimlich v. Harvey* (1949), 255 Wis. 471, 39 N. W. (2d) 394.

The defendant contends a new trial should be granted because of the perversity of the verdict in respect to damages, errors committed by the court in submitting an instruction on *res ipsa loquitur,* the plaintiff's interjection of the existence of insurance coverage, the court's reference to the absence of the plaintiff's witness as a reason for adjourning the case, and because of the improper conduct of the plaintiff's attorney during a view of the premises and remarks concerning the defendant's counsel during closing argument. In reviewing the record on the damages, we cannot find the award of $15,000 was the result of perversity although we agree it is excessive and was not sustained by the evidence. The only permanent injury to the eye is not the loss of sight but the pain and suffering when using the eye for concentrated work such as sewing and looking

at television. Such condition is permanent although the pain may be alleviated somewhat by the use of medication. The trial court reduced the award to $5,000. Whether we believe the evidence would sustain more or less is not the test if the evidence sustains the amount found by the trial court. While the $5,000 may be considered liberal in view of the evidence, we cannot say as a matter of law that it should be set aside.

In respect to the injection of insurance coverage of the defendant by a witness, the defendant refused the court's offer to instruct the jury to disregard the remark and cannot now raise the point. In adjourning the case until the next day because the plaintiff could not locate a witness, the trial court explained to the jury the reason for the adjournment. We do not think under the facts this emphasized the importance of this witness or amounts to error.

At the close of plaintiff's argument, the court called to the attention of counsel that he had not stated any amount in reference to the damages and would be foreclosed from doing so in his rebuttal argument if the defendant chose not to state an amount. Defendant argues the trial court erred "in soliciting an opinion as to damages from plaintiff's counsel during the closing argument." While some trial judges might not have called the attention of plaintiff's counsel to the rule, we do not find it was error to do so. On the record before us which is incomplete in many respects on other assigned errors, which we need not discuss, we do not find the verdict was the result of perversity or prejudice or that error was committed requiring a new trial.

The plaintiff seeks by way of review to call our attention to the trial court's order of remittitur. The defendant having appealed, the plaintiff under *Plesko v. Milwaukee* (1963), 19 Wis. (2d) 210, 120 N. W. (2d) 130, is entitled to a review of the award of damages even though he has accepted the option of a lesser amount, if he has timely made an application for review. Sec. 274.12 (1), Stats.,

provides a respondent may have a review by serving a notice of review any time before the case is set for hearing before this court. It is admitted no notice was served excepting the notice in the respondent's brief. This case was placed on the warning calendar on March 1, 1963, the appellant's brief filed April 19th, and served on the respondent April 22d. The case was set for hearing (postcards sent out) on May 3d. Thereafter on May 22d the respondent's brief was served. Under the decisions of *Wisconsin Foundry & Machine Co. v. Capital City Canning Co.* (1929), 198 Wis. 154, 223 N. W. 446, and *Isaac v. Gerretson Co.* (1923), 179 Wis. 417, 191 N. W. 55, the notice of review, considering the plaintiff's brief to be such, was served too late.

In its reply brief, the defendant raises the additional question of damages in respect to medical expense and loss of wages. Other than arguing all damages were the result of perversity, we do not find that these items of damages are properly before us. The alleged error in allowing medical expense to the wife was not raised on motions after verdict although seven other errors were. The excessiveness of the award for loss of wages was corrected by the remittitur.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*concurring*). This court recently stated in *Turk v. H. C. Prange Co.* (1963), 18 Wis. (2d) 547, 553, 119 N. W. (2d) 365, "However, in Wisconsin, specific elements of negligence can be alleged or supported in evidence without destroying the doctrine [of *res ipsa loquitur*]." Nevertheless, the evidence adduced by a plaintiff with respect to specific acts of negligence on the part of defendant may be so strong or all-inclusive as to render it improper to give a *res ipsa loquitur* instruction. I consider that the instant case presents us with an excellent opportuni-

ty to clarify some of the confusion which exists in the minds of the trial bench and bar on this point of when evidence of specific elements of negligence does render it improper to give such an instruction.

The nearest that the court's opinion comes to stating a guideline on this point is this statement, "Specific elements of negligence not reaching the point of a *prima facie* case which is overcome by other evidence may be supported by application of the doctrine [of *res ipsa loquitur*]." To me this but confounds the confusion.

The use of the terminology of *"prima facie* case" and "overcome by other evidence" smacks of the concept that *res ipsa loquitur* is a rebuttable presumption. This court is firmly committed to the principle that *res ipsa loquitur* is not a presumption but creates an inference that the jury may apply or not as it sees fit. Therefore, it is ordinarily for the jury and not the trial court to decide whether defendant's evidence has been sufficient to rebut the inference of negligence arising from the untoward happening of the accident causing personal injury or property damage where the instrumentality producing such result was in the control of defendant. There may be rare cases where the defendant's evidence rebutting the inference of negligence arising by application of the doctrine of *res ipsa loquitur* must be accepted as a verity. However, in such a rare situation the problem then confronting the trial court will not be so much whether to instruct the jury on *res ipsa loquitur* but rather whether a verdict should be directed for defendant.

Apparently, when the majority opinion speaks of evidence of specific elements of negligence not creating a *prima facie* case, it means that such evidence standing alone would not support a verdict for plaintiff. I agree in that case the evidence adduced of specific elements of negligence should not render improper the giving of a *res ipsa loquitur* instruction if the situation is otherwise one where the giving of the in-

struction would be called for. However, it is possible to envisage situations in which the evidence adduced of specific elements of negligence would be sufficient to support a verdict for plaintiff and nevertheless the giving of a *res ipsa loquitur* instruction would be proper. One such situation would be where plaintiff claims defendant was negligent in respects A and B and the evidence relating to a specific act of negligence only tends to prove negligence in respect A but not B. Another such situation would be where plaintiff presents comparatively weak evidence of an act of specific negligence on the part of defendant, but the happening of the accident suggests that defendant may have been negligent in some other respect which plaintiff is unable to pinpoint. In this latter situation the jury might well reject the adduced evidence of a specific element of negligence, but still find for plaintiff if given a *res ipsa loquitur* instruction. It would be unfair to penalize a plaintiff for presenting what evidence of specific negligence he has by denying him the benefit of the doctrine of *res ipsa loquitur*.

This suggests that the test of whether a *res ipsa loquitur* instruction should be given, in a situation where plaintiff has adduced evidence of a specific element of negligence, is whether this adduced evidence would render the giving of the instruction superfluous.